IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RAVINDRA PRADHAN,

                    Plaintiff,

          v.                              Case No. 13 C 7579

                                          Harry D. Leinenweber
ALIN MACHINING COMPANY, INC.,
d/b/a POWER PLANT SERVICES
CORPORATION,

                    Defendant.

MEMORANDUM OPINION AND ORDER

I.  BACKGROUND

     The Plaintiff, Ravindra Pradhan, brought this suit against his
former employer alleging national origin discrimination (Asian-
American Indian-subcontinent) and age discrimination (age 65).  The
Defendant employer conducts business as a non-OEM supplier that
manufactures replacement parts for turbines, generators, pumps,
compressors and related materials for the power generating
industry.  In addition, the company provides engineering, re-
engineering, repair and field machining.
*http:www.bloomberg.com/research/stocks/private/snapshot.asp?privc
apld=30941782* (visited September 14, 2015).

     Plaintiff, the possessor of three engineering degrees, has an
employment background in manufacturing and industrial engineering.
He was hired by Defendant on November 13, 2006, at the age of 60

years.  He is an Asian-American of Indian origin.  He was terminated on September 26, 2011, when he was 65 years of age.  He was hired by Defendant after meeting with Manish Gandhi ("Gandhi"), owner of 100% of Defendant and its President and CEO.  Gandhi was, at the time, approximately 50 years of age and was also an Asian-American of Indian origin.  Plaintiff's initial position with Defendant was Chief Operating Officer and Vice President with an annual salary of $150,000.  As COO and Vice President, all departments reported to him, including finance and recruiting.

In 2009, as a result of decreased sales due to the economic downturn, several employees including Plaintiff saw their salaries reduced.  Plaintiff's title was changed to Vice President Enabling Services and his salary was reduced to $120,000.  The changes apparently resulted from the recommendations of a consultant hired by Defendant.

In 2010, Defendant hired Anthony McGee ("McGee"), 45 years of age, a certified public account with previous experience as a chief financial officer, as CFO.  Shortly after the hiring of McGee, Gandhi met with Plaintiff to discuss his new work and duties.  As a result of McGee's hiring, Plaintiff's accounting duties were decreased.  In 2011, Defendant hired Eric Cohen ("Cohen")(45 years of age) as its President.  Cohen had experience in the private equity industry and was experienced with mergers and acquisitions and had a Harvard MBA.  Apparently Defendant had been actively

involved in acquisitions that had recently greatly increased the size of the company.

During Cohen's first week, he began holding meetings with certain department heads but did not include Plaintiff because at the time he had no employees reporting to him. At approximately sixty (60) days into his employment, Cohen authored a memorandum to Gandhi evaluating all aspects of the business as well as his assessment of the management. He assessed the capabilities of various managers, including both Indians and non-Indians. He found fault with some of both groups, including Plaintiff. With respect to Plaintiff, he wrote:

> "Ravi does not have customer or product experiences. . . . His management style was not effective. Recommendation - we should let Ravi continue on his various projects, while we try to find a new role for him. If he finishes most of his products, and we do not have a role for him, we should terminate Ravi."

He also recommended termination of several other employees including two of American origin. This recommendation was provided to Gandhi.

On September 13, 2011, Cohen, McGee, and Ms. Mai ("Mai") (Human Resources head), all of whom were younger than Plaintiff, met with Gandhi, without Plaintiff's knowledge, to discuss Plaintiff's employment with Defendant. At this meeting the decision was made to terminate Plaintiff because there was "no applicable work for him" in the future. Gandhi agreed with the decision to terminate Plaintiff due to his "redundancy" as a result

of the economic "meltdown" in 2010 and 2011, and because there was no longer a role left for him at Defendant at his rate of pay.

A second meeting was held by the same four people on September 26, 2011, at which it was agreed that the three employees, Cohen, McGee and Mai, would assume Plaintiff's work duties so that it would not be necessary to replace him. Plaintiff had no knowledge of this meeting either. On the same day Cohen, with McGee and Mai present, informed Plaintiff that he was terminated.

## II.  DISCUSSION

Defendant's position is straightforward:  there was no work for Plaintiff that could not be performed by existing personnel, so it made no sense to keep him on.  Although Defendant alluded to certain performance issues, such as tardiness, Cohen testified that he did not believe that work performance played a role in his termination, that "there just wasn't a job for him at the company."

Plaintiff's position is that the record supports *prima facie* cases of national origin and age discrimination through both the direct and the indirect methods of proof.

### A.  The Direct Method

Plaintiff's "direct" case relies almost exclusively on an alleged e-mail to Gandhi, which Plaintiff may or may not have been copied, from an employee named Snehal Patel ("Patel"), who is assumed to be an Asian-American of Indian extraction.  Patel was a

- 4 -

Product Engineer in repairs at Defendant's plant in Oswego, Illinois. The e-mail stated:

> "What you want me to do, come there and lick yours and Atiq's feet now. I will do that for my family sack *[sic]*. I know Eric Cohen don't like Indian people much so I figured I have no career left here."

(The "Atiq" referred to is presumably Atiq Quadri, the Operations Department head who apparently was Patel's boss). For some reason, Patel's deposition was not taken and no affidavit was obtained from him. Gandhi testified that he had minimal recollection of receiving the e-mail and Patel was prone to sending e-mails that didn't make any sense. Defendant disputes the allegation that Cohen didn't like Indian people and argues that the e-mail constitutes hearsay because it is an out-of-court statement, not under oath, submitted for the truth, *i.e.,* that Cohen doesn't like Indians.

Plaintiff in a Sur-reply contends that it is admissible under F.R.E. 801(d)(2)(D) as a statement of a party's employee concerning a matter within the scope of his employment and during the existence of the employment relationship. He cites *Simple v. Walgreen Co.,* 511 F.3d 668, 672 (7th Cir. 2007), which held that, although it was not necessary that the employee whose statement is being offered, be involved in the employment action under question, he must at least be involved in the decision making process affecting the employment action. In that case the plaintiff, an African-American, had been denied the managership of a store

- 5 -

located in a predominately white area.  The manager of the store
where plaintiff was employed as the assistant manager, told him
that racial reasons were probably the reason he did not get the
appointment.  Although the manager had nothing to do with the
actual employment action, *i.e.,* failure to appoint, her comments
were held admissible as an admission against Walgreen, because her
boss, the appointing authority, had asked for and was given her
input.  Thus, the court held that she had been involved in the
decision making process leading up to the employment action.
Plaintiff makes no claim that Patel had any role in Plaintiff's
termination nor any claim that he was consulted about Plaintiff's
termination.  Thus, unlike the situation in *Simple v. Walgreen,*
Patel had nothing to do with either the employment action or the
decision making process leading up to the employment action.  Thus,
the contents of the e-mail were not uttered in the course and scope
of Patel's employment as required to obtain admission pursuant to
Rule 802(d)(2)(D).  The statement must therefore be rejected as
inadmissible hearsay.

Plaintiff makes several other arguments as to admissibility of
the e-mail's contents.  The next is that the e-mail shows
Defendant's state of mind.  He cites *Lukie v. Ameritech Corp.,* 389
F.3d 708, 716 (7th Cir. 2004) and *Grace v. Ansul, Inc.,* 61
F.Supp.2d 788, 792, fn.6 (N.D.Ill. 1999).  In both cases, the
statements alleged to be evidence of state of mind were statements

made by decision makers whose state of mind was relevant. The last argument alleged is that the statement is relevant under F.R.E. 404(b) to prove Cohen's motive, intent, plan, and knowledge. However, it certainly is not relevant to show anything about Cohen, because at most it shows Patel's state of mind. Furthermore, any proof submitted under Rule 404(b) must be through admissible evidence and the Court has already ruled that the e-mail constitutes inadmissible hearsay.

The only other evidence that was put forward as direct evidence of discrimination was related to Plaintiff's age discrimination claim. After Gandhi and Plaintiff returned from a 2011 trip to India, and after Plaintiff had recovered from a bout with pneumonia, Gandhi told Plaintiff that he should "take a break." Plaintiff apparently contends that this means that Gandhi considered Plaintiff to be old and tired. The other remark allegedly made by Gandhi occurred in 2010. Gandhi allegedly said that the then Director of Sales "was getting old." Since there was at least a year between the first remark, and two years between the second remark, and Plaintiff's termination, there is no obvious connection between the remarks and the later employment action. To be actionable the remarks must be both "proximate and related to the employment decision in question," *Cianci v. Pettibone Corp.*, 152 F.3d 723, 727 (7th Cir. 1998), which they clearly are not. Moreover, Plaintiff was 60 years old when Gandhi hired him in 2006,

and 65 when he was terminated in 2011. As stated in *Rand v. CF Industries, Inc.,* 42 F.3d. 1139, 1146 (7th Cir. 1994), "In cases where the hirer and firer are the same individual and the termination of employment occurs within a relatively short time span following hiring, a strong inference exists that discrimination was not a determining facto for the adverse action taken by the employer." Therefore, the Plaintiff has failed to establish a *prima facie* case of discrimination by the direct method.

## B. The Indirect Method

Therefore, we proceed to determine whether Plaintiff can establish a *prima facie* case under the *McDonnell Douglas* indirect method of proof. He is a member of a protected group (Asian-American); he suffered an adverse employment action (termination), and he has established sufficient evidence that he was meeting his employer's legitimate expectations. While Defendant contends otherwise, it is clear that there is a legitimate question of fact as to this point. Cohen testified that work performance was not part of the reason for his termination and Gandhi awarded him a 2% pay increase shortly before his termination. Plaintiff is excused from having to prove the similar-situated factor usually required of employment discriminations complainants because what occurred here was a "mini-RIF," *i.e.,* he was the only one terminated and his duties were assumed by other younger employees who were non-

Indians. *Michas v. Health Cost Controls of Illinois, Inc.,* 209 F.3d 687, 693-4 (7th Cir. 2000). However, Defendant has put forth as a legitimate reason for his termination was the lack of work. It was therefore incumbent upon Plaintiff to come forth with some evidence that the stated reason was a pretext for unlawful discrimination. The evidence was clear on this point that at the time of his termination there was little or no work for him to do: certainly not enough to warrant paying his current salary. He had, so far as the record is concerned, completed, or at least stopped working on, the projects he had been assigned.

After his job change in 2009 when his title was changed to Vice President of Enabling Services, he was tasked with executive recruiting and determining certain merger and acquisition possibilities. As such, he no longer had any employees reporting to him. It became apparent as time went on that there was just not enough work to justify his continuation so he was terminated. He has not countered this evidence. Therefore, having failed to counter the alleged legitimate reason for his termination with any evidence that it was pre-textual he has failed to establish a claim for employment discrimination based on national ancestry or age. *Naficy v. Ill. Dept. Of Human Services,* 697 F.3d 511-512 (7th Cir. 2012).

One final comment: it, of course, must be noted that Gandhi himself is an Asian-American of Indian extraction the same as

Plaintiff.  While not dispositive, this fact makes it unlikely that Gandhi would have harbored such ill-will toward fellow Asian-Americans.  Plaintiff contends that Gandhi was a cat's paw for Cohen but it still most unlikely that he would have allowed Plaintiff to be terminated solely because of his ancestry or age.

### III.  CONCLUSION

For the reasons stated herein, Defendant's Motion for Summary Judgment is granted on both the national origin claim and the age claim.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: September 29, 2015